JOHN S. SARGETIS (SBN: 80630)
STEPHEN J. FOONDOS (SBN: 148982)
**UNITED LAW CENTER**
3013 Douglas Blvd., Suite 200
Roseville, CA 95661
Tel.: (916) 367-0630
Fax: (916) 265-9000

Attorneys for Plaintiff
MARK MILLER

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| MARK MILLER,<br><br>Plaintiff,<br><br>vs.<br><br>GMAC MORTGAGE, LLC; QUICKEN LOANS INCORPORATED; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1 through 50.<br><br>Defendants. | **Case No.: 2:11-cv-00257-MCE-DAD**<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**1. Deceit**<br>**2. Civil Conspiracy**<br>**3. Negligence**<br>**4. Breach of Fiduciary Duty**<br><br>**[The Hon. Morrison C. England, Jr]**<br>**Courtroom: 7**<br><br>**Complaint Filed: December 22, 2010**<br><br>**[JURY DEMANDED]** |

**COMES NOW,** Plaintiff MARK MILLER ("Plaintiff"), and alleges against Defendants, and each of them, as follows:

**I. THE REAL PROPERTY AND PARTIES**

1. Plaintiff is, and at all times herein relevant was, an individual residing in Foresthill, County of Placer.

2.	Plaintiff brings this action against Defendants for damages, equitable and injunctive relief resulting from the Defendants' acts or omissions as set forth herein concerning and surrounding the residential mortgage loan transaction ("Subject Loan") on the Plaintiff's property located 5234 Crestline Drive, Foresthill, California 95631 ("Subject Property").

3.	Plaintiff alleges that, at all times herein relevant, QUICKEN LOANS INC., ("QUICKEN") was the named original lender on the Deed of Trust for the Subject Loan. On information and belief, at all times herein relevant, QUICKEN was engaged in the business of promoting, marketing, servicing, and/or selling mortgage loans, such as the Subject Loan, in, and transacted business, the County of Placer.

4.	Plaintiff alleges that, at all times herein relevant, Defendant GMAC MORTGAGE, LLC, ("GMAC") is named in the Assignment of Deed of Trust as the assignee of the Note and Deed of Trust. GMAC engage, and engages, in the business of promoting, marketing, servicing, and/or selling mortgage loan, such as the Subject Loan in, and transacted, and transacts, business in the County of Placer.

5.	Plaintiff alleges that, at all times herein relevant, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") was identified as the beneficiary on the Deed of Trust for the Subject Loan. On information and belief, at all times herein relevant, MERS was, and is now, a confidential computer registry utilized by MERS "members," which are primarily lenders, to list and trade mortgage loans on the secondary market while avoiding the legal fees and requisites of recording conveyances of said loans and Deeds of Trusts.

6.	Plaintiff alleges that, at all times herein relevant, Defendant GMAC ("GMAC") was, and is now, a business entity and is the servicer of the Subject Loan. On information and belief, at all times herein relevant, GMAC was, and is now, engaged in the business of promoting, marketing, servicing, and/or selling mortgage loans, such as the Subject Loan, in, and transacted business in, the County of Placer.

7.	Whenever reference is made in this Complaint to any act of any corporate or other business Defendant, that references shall mean that the corporation or other business did

the acts alleged in this Complaint through its officers, directors, employees, agents and/or representatives while acting within the actual and ostensible scope of their authority.

8. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 50 are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names, and Plaintiff will amend this Complaint to show their true names, involvement and capacities when the same has been ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants harmed herein as DOE was in some manner responsible for the harm and losses suffered by Plaintiff and/or will be responsible for the future harm and losses to Plaintiff.

9. Plaintiff is informed and believes, and thereon alleges, that at all relevant times QUICKEN, GMAC and MERS, and DOES 10-25 were actual and apparent agents of one another, and in doing the things herein alleged, were acting within the course and scope of their actual and apparent agency and with the knowledge, notification, consent and ratification of each other.

## II. JURISDICTION AND VENUE

10. Plaintiff is, and at all times herein relevant was, an individual residing in Foresthill, County of Placer.

11. The Subject Property is located at 5234 Crestline Drive, Foresthill, California 95631 within the County of Placer.

12. Defendants, and each of them, at all times herein relevant, regularly engaged, and engage, in business in the State of California, County of Placer, and regularly provided, and provide, mortgage loans and related services. The majority of the transactions and events that are the subject matter of this Complaint occurred within County of Placer, State of California.

## III. GENERAL ALLEGATIONS

13. Plaintiff incorporates by reference the allegations set forth above and below.

14. This action arises out of a predatory lending scheme to which Plaintiff was subjected through mortgage loan related activity involving the Plaintiff's residence, the Subject Property.

***Plaintiff's Victimization***

15. In or about December 2007, Plaintiff sought to obtain a mortgage loan in order to purchase the Subject Property as his primary residence.

16. Also in or about December 2007, Plaintiff spoke with Suren Srabian ("SRABIAN"), who was a broker, registered sales person, and/or employee of QUICKEN, concerning his intent to purchase the Subject Property.

17. In or about December 2007, Plaintiff provided SRABIAN with his financial information in order for him to complete Plaintiff's loan application.

18. Although Plaintiff provided SRABIAN with his tax records for the year of 2006 and other financial information, he overstated Plaintiff's income as $8,125.00 per month, when his actual monthly income was $6,083.33, a difference of $2,041.66.

19. On January 11, 2008, QUICKEN sent a notary to Plaintiff's home with the loan documents. The notary arrived after he returned work at about 6:00 p.m. The notary did not explain any of the terms in the loan package, nor were the terms previously explained to Plaintiff by SRABIAN or any other representative from QUICKEN. SRABIAN had instructed the subject loan so that only Plaintiff was a signatory on the final note. Therefore, while both Plaintiff and his wife were named in the Deed of Trust, the actual obligation was only undertaken by Plaintiff as shown by the Note and the loan application. The notary produced a "stack" of loan documents, which she leafed through the documents showing Plaintiff where to sign. All of the signature lines were tabbed with place holders in order to make the process faster. Further, no one ever pointed out significant provisions of the written agreements or suggested that Plaintiff should read the documents carefully. After spending about an hour with Plaintiff, the notary left with the signed loan documents.

20. Plaintiff was rushed when signing the documents and the closing process provided no time for review and took minutes to accomplish.

21. Plaintiff could not understand any of the documents and signed them based on the SRABIAN's representations and the trust and confidence Plaintiff placed in SRABIAN and QUICKEN.

22. Plaintiff was never explained the full terms of the loan, including the risks and disadvantages of the loan.

23. Although SRABIAN represented to Plaintiff that he had correctly completed Plaintiff's loan application with the financial information he provided, SRABIAN overstated Plaintiff's income as $8,125.00 per month, when his actual monthly income was $6,083.33, a difference of almost $2,041.66.

24. Both SRABIAN and QUICKEN falsely guaranteed that the Subject Loan would become more affordable as Plaintiff's salary increased and that the Subject Loan could be refinanced when the payment schedule inevitably became unaffordable for Plaintiff, which salary increases and refinancing options SRABIAN and QUICKEN had no reason to believe would be available.

25. SRABIAN did not disclose that her commission on the Subject Loan would be higher than with other types of loans.

26. QUICKEN engaged in the conduct described herein for the purpose of closing a higher volume of loans for QUICKEN's financial gain, at the expense of both Plaintiff and investors in the mortgage-backed securities supported by the Subject Loan, which were sold by QUICKEN and its successors.

27. SRABIAN and QUICKEN engaged in a campaign of deceptive conduct and concealment to maximize their profits, even though it knew its conduct would cause many to suffer great harm.

28. SRABIAN and QUICKEN were aware that selling the Subject Loan to Plaintiff was not in Plaintiff's best interests, but was in fact against his interests.

29. SRABIAN and QUICKEN were aware that, by selling the Subject Loan to Plaintiff, Plaintiff would almost inevitably suffer great harm as a result. SRABIAN and QUICKEN were aware of the foreseeable consequences of the conduct described herein to Plaintiff.

30. SRABIAN and QUICKEN established and implemented the policy of failing to disclose material facts about the Subject Loan.

31.     SRABIAN and QUICKEN had a duty to disclose to Plaintiff all material facts regarding consummation of the Subject Loan and the resulting Deed of Trust that may have affected his decision to consummate the Subject Loan.  Any material concealment or misrepresentation of material facts amounts to deceit.

32.     Plaintiff reasonably believed, based on SRABIAN and QUICKEN's representations, that he would be able to refinance the Subject Loan with a new loan if he became unable to make his monthly mortgage payments.  However, Plaintiff would be unable to refinance his home at that time because there would be little-to-no-equity left with which to refinance.

33.     Plaintiff believed these facts to be true because that is what SRABIAN and QUICKEN wanted consumers to believe.

34.     In spite of their knowledge, SRABIAN and QUICKEN marketed their loan as a product that would provide Plaintiff with a low interest rate, and at all times herein relevant, failed to disclose and/or conceal by making partial representations of material facts the true terms and consequences of the Subject Loan when QUICKEN had exclusive knowledge of aforesaid material facts.  At all times herein relevant, this concealed and omitted information was not known to Plaintiff.

35.     Knowing the truth and motivated by profit and market share at the expense of Plaintiff, SRABIAN and QUICKEN knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff.

36.     The Subject Loan resulted, and will continue to result, in significant loss and damage to Plaintiff.

37.     The facts SRABIAN and QUICKEN misrepresented and concealed, as alleged in the preceding paragraphs, were material to decision of whether to consummate the Subject Loan in that Plaintiff would not have consummated the Subject Loan but for their unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

38.     SRABIAN and QUICKEN engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to consummate loans regardless of

whether the loans were beneficial for the consumers.

39. SRABIAN and QUICKEN's unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether Plaintiff or others similarly situated would, in fact, receive a loan that provided the promised low interest and payment rate.

40. Upon information and belief, at all times herein relevant, SRABIAN and QUICKEN possessed full knowledge and information concerning the above facts.

41. Plaintiff alleges that SRABIAN and QUICKEN established such a policy so as to profit, knowing Plaintiff would be unable to perform future terms of the loan.

42. The aforementioned misrepresentations, omissions and acts surrounding the Subject Loan transaction were purposefully hidden from Plaintiff to prevent his discovering the true nature of the transaction.

43. The misrepresentations and allegations stated herein were all discovered within the past year such that any applicable statute of limitations are extended, or should be extended, pursuant to the equitable tolling doctrine or other equitable principles.

44. Plaintiff is informed and believes, and thereon alleges, that MERS was an integral part of the great mortgage scheme as it allowed, and still allows, its "members" to avoid the legal requisites of transferring interest in real property by acting as a straw man for all participants, including Defendants, in the transactions.  However, MERS is not the true beneficiary under any Note or Deed of Trust, but rather is an electronic "registry" of listed Deeds of Trust that are secretly traded, bundled, securitized, and resold on Wall Street.  Plaintiff is further informed that MERS is not licensed to conduct business in California, nor was it registered with the State of California at the inception of the Subject Loan.

45. Plaintiff is informed and believes, and on that basis alleges, that QUICKEN and GMAC at some point transferred its interest in the Note and Deed of Trust to an unknown financial entity, which in turn transferred its interest to third party investors(s) apart from the remaining Defendants, but the identity of this true beneficiary remains a mystery to Plaintiff.

46.     Plaintiff is informed and believes, and on that basis alleges, that none of the named Defendants is the current beneficiary of the Note or Deed of Trust and are not "persons entitled to enforce" the security interest under the Note and Deed of Trust as defined in the California Commercial Code.

47.     Plaintiff is informed and believes, and on that basis alleges, that Defendants do not know the Subject Loan and are therefore not entitled to enforce the security interest. Plaintiff contends that no legal transfer of the Note, Deed of Trust, or other interest in the Subject Property was affected which would give any named Defendant the right to be designated and exercise the powers of the trustee, mortgagee, beneficiary, or authorized agent of same.

48.     Defendants QUICKEN, MERS and GMAC have represented that they have the right to payment under the Note, which was secured by the Deed of Trust.  However, QUICKEN, MERS and GMAC are not real parties in interest because they are not the legal trustee, mortgagee, or beneficiary, nor are they authorized agents of the trustee, mortgagee, or beneficiary.  Moreover, none of the Defendants, including QUICKEN, MERS and GMAC, is in possession of the Note, is a holder of the Note, or is a non-holder of the Note entitled to payments as required by the California Commercial Code.  Defendants, their agents, beneficiaries, or anyone acting on their behalf, are not the holder of the Note, nor has any of them received an endorsement of the Note from the true Note holder.

49.     Plaintiff has been, and will continue to be, seriously injured unless Defendants' collection and/or threatened foreclosure proceedings and other aforesaid activities are not permanently enjoined.

**FIRST CAUSE OF ACTION**
**DECEIT**
**(Against GMAC/QUICKEN)**

50.     Plaintiff incorporates by reference the allegations set forth above and below.

51.     California Civil Code §1709 provides that: One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages, which he thereby suffers.

52. Deceit within the meaning of California Civil Code §1709 can take any of these forms (California Civil Code §1710): (a) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true, commonly referred to as intentional misrepresentation; (b) The assertion, as a fact, of that which is not true, by one who has no reasonable grounds for believing it to be true, commonly referred to as negligent misrepresentation; (c) The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact commonly referred to as concealment; or (d) A promise, made without any intention of performing it commonly referred to as a false promise.

53. Plaintiff is informed and believe, and thereon allege, that at all times herein relevant, SRABIAN and QUICKEN were agents of each other and, in doing the things alleged herein, were acting within the course and scope of such agency and with the permission and consent of their co-defendants.  QUICKEN is also responsible for the actions or representations of SRABIAN on the basis of *Respondeit Superior* as SRABIAN was an employee for QUICKEN.

54. The material representations made by SRABIAN in connection with the said loan were false. The "who, what, when, where, and how" of the fraud are alleged below.

55. Representation**:** That Plaintiff could refinance the loan at a later date
    i. Who made the representation:
        1. Name: SRABIAN
        2. Employer: QUICKEN
        3. Title, capacity, or role of the person: salesperson and employee of QUICKEN
    ii. Authority to speak: Employee of QUICKEN
    iii. How or by what means was the representation made: verbally, over the phone
    iv. When was the representation made: In or about December of 2007 and In or about January of 2008

    v. Where was the representation made: Over the phone.

    vi. To whom was the representation made: to Plaintiff

     a. **What was false or misleading about the representation:** SRABIAN could not guarantee that Plaintiff could refinance the loan.

     b. **The materiality of the false representation:** Plaintiff would not have entered into the Subject Loan without the ability to refinance at a later time.

     c. **Damages:** Plaintiff has been unable to refinance the loan and as a result Plaintiff has been paying on a loan with terms that would be better if he could refinance.

     d. **Tolling:** Plaintiff is excused from not having discovered the Defendant's misrepresentation, because he had no way of knowing that he could not refinance.

56. **Misrepresentation:** Express representation that Plaintiff could afford the loan and that it would only become more affordable as Plaintiff made more money.

    vii. Who made the representation:

     1. Name: SRABIAN

     2. Employer: QUICKEN

     3. Title, capacity, or role of the person: salesperson and employee of QUICKEN

    viii. Authority to speak: Employee of QUICKEN representing she could act on behalf of QUICKEN.

    ix. How or by what means was the representation made: verbally

    x. When was the representation made: In or about December of 2007 and In or about January of 2008

    xi. Where was the representation made: Over the phone.

    xii. To whom was the representation made: to Plaintiff

    e. **What was false or misleading about the representation:** Plaintiff could not afford the loan at the time he received the loan because SRABIAN had overstated Plaintiff's income.

    f. **The materiality of the false representation:** Plaintiff would have never entered into the Subject Loan had he known he could truly not afford it.

    g. **Damages:** As a proximate result of Defendants' misrepresentation about the terms of the loan, Plaintiff was put into a loan he did not want and could not afford. Plaintiff has suffered, and will continue to suffer, damages the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court. Plaintiff is entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiff has been forced to retain a law firm to enforce their rights and have incurred, and will continue to incur, costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to according to proof.

    h. **Tolling:** Plaintiff had no way of knowing from the terms of the note that there income was misstated by Srabian, the employee for Quicken.

57. Defendants knew Plaintiff was unaware of, and could not reasonably have discovered, material information about the loan transaction based on their false representations and material non-disclosures, the false information on which the Subject Loan was prepared and approved, and the loan documents were of such a voluminous nature that a reasonable person could not be expected to read and understand all of the documents.

58. The Defendants' aforementioned conduct consisted of intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Defendants, and each of them, acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiff, and to the direct benefit of Defendants, knowing Defendants' conduct was substantially certain to vex, annoy, and injure

Plaintiff and entitle him to punitive damages under California Civil Code §3294, in an amount sufficient to punish or make an example of Defendants.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**CIVIL CONSPIRACY**
**(Against QUICKEN/GMAC)**

59. Plaintiff incorporates by reference the allegations set forth above and below.

60. Plaintiff is informed and believes, and thereon alleges, Defendants conspired and agreed to implement a scheme to deceive and victimize Plaintiff through the predatory lending practices and other unlawful conduct alleged herein.

61. Plaintiff is informed and believes, and thereon alleges, Defendants did the acts and things alleged herein pursuant to, and in furtherance of, their conspiracy to deceive and victimize Plaintiff as alleged herein.

62. The Defendants agreed amongst themselves to take the illegal and improper actions described herein, including taking actions that violated various common and state law duties, to reach their goal of maximizing their financial benefit at Plaintiff's expense. The Defendants' actions were undertaken with actual malice in that they were motivated by a desire to deceive Plaintiff and cause Plaintiff to be put in a position where he would likely lose his property.

63. Defendants, and each of them, committed the aforementioned acts pursuant to an agreement by and between Defendants to deceive Plaintiff into entering the Subject Loan.

64. The statute of limitations does not begin to run on any part of a Plaintiff's claim of civil conspiracy until the "last overt act" pursuant to the conspiracy has been completed.

65. As a proximate result of the Defendants' conduct, as herein alleged, Plaintiff has suffered, and will continue to suffer, damages, the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court. Plaintiff is entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiff has been forced to retain a law firm to enforce their rights and have incurred, and will

continue to incur, costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to according to proof.

66. Defendants' aforementioned conduct consisted of deceit, and/or concealment of material facts known to them with the intention on their part of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Defendants, and each of them, acted deceptively, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiff, and to Defendants' direct benefit, knowing Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiff and entitle him to punitive damages under California Civil Code §3294, in an amount sufficient to punish or make an example of Defendants.

67. Defendant GMAC is a party to the conspiracy because GMAC is aware of the acts that occurred to Plaintiff as these representations were very common in the industry during the time that Plaintiff obtained this loan. GMAC has acted in furtherance of the Conspiracy by collecting payments on the same fraudulent obligation.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**NEGLIGENCE**
**(Against Quicken/GMAC)**

68. Plaintiff incorporates by reference the allegations set forth above and below.

69. To state a claim for negligence, Plaintiff must allege: (1) Defendants' legal duty of care owed to Plaintiff, (2) breach of that duty, (3) causation, and (4) resulting injury to Plaintiff.

70. As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional rose as a mere lender of money.

71. However, there are instances where the law imposes a duty on the lender as described herein in reference to QUICKEN/GMAC. First, QUICKEN/GMAC owed Plaintiff a duty if it had an agency relationship with SRABIAN. Second, QUICKEN/GMAC owed

Plaintiff a duty if it exceeded its scope as a mere lender of money during the consummation of the Subject Loan.  Third, QUICKEN/GMAC owed Plaintiff a duty if it funded the Subject Loan knowing it contained an overstatement of Plaintiff's income and an overinflated value of the Subject Property.  Fourth, QUICKEN/GMAC owed Plaintiff a duty if the following six factors favor Plaintiff: (1) the extent to which the transaction was intended to affect Plaintiff, (2) the foreseeability of harm to Plaintiff, (3) the degree of certainty that Plaintiff suffered injury, (4) the closeness of the connection between QUICKEN/GMAC's conduct and the injury suffered, (5) the moral blame attached to QUICKEN/GMAC's conduct, and (6) the policy of preventing future harm.

72.     In the present case, QUICKEN/GMAC also exceeded its scope as a mere lender of money by, among other things, discarding traditional underwriting guidelines to sell more loans to feed the need on Wall Street for mortgages and to thereby increase QUICKEN/GMAC's profit.  SRABIAN/QUICKEN knowingly accepted and processed the falsified Loan Application containing an overstatement of Plaintiff's income and funded the Subject Loan thereon.

73.     In the present case, SRABIAN/QUICKEN knowingly overstated Plaintiff's income and told Plaintiff he could afford their loan.  SRABIAN/QUICKEN also told Plaintiff that he could later refinance despite knowing that he may not be true.

74.     In the present case, QUICKEN/GMAC owed Plaintiff a duty based on the six-factor test.  First, the transaction at issue was undoubtedly intended to affect Plaintiff in that the outcome of the Loan Application determined what type of loan Plaintiff would qualify for. Second, it was readily foreseeable that misstating the amounts on the Loan Application and providing Plaintiff with a loan for which he was not qualified would potentially harm Plaintiff in that it increased the likelihood he would default on the loan.   Third, Plaintiff's injuries are also certain because he lost an opportunity to obtain a loan he could afford.  Plaintiff was damaged because he received a larger payment as a result of the larger loan.    Fourth, QUICKEN/GMAC's conduct is closely connected to Plaintiff's injuries because Plaintiff would not have suffered injury had QUICKEN/GMAC not knowingly funded the Subject Loan based

on false information. Fifth, QUICKEN/GMAC's conduct warrants moral blame because it conspired to get Plaintiff into a loan QUICKEN/GMAC knew Plaintiff could not afford, based on the 4506-T and other information it had regarding Plaintiff's financial situation, so QUICKEN/GMAC and its co-conspirators could make more money through origination fees and by selling Plaintiff's loan on Wall Street as a mortgage-backed security. Sixth, public policy will be better served if QUICKEN/GMAC, and other lenders, are prohibited from marketing and extending deceptive loans to potential borrowers.

75. As a proximate result of Defendants' conduct, as herein alleged, Plaintiff has suffered, and will continue to suffer, damages, the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court. Plaintiff is entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiff has been forced to retain a law firm to enforce their rights and have incurred, and will continue to incur, costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to according to proof.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Against Quicken)**

76. Plaintiff incorporates by reference the allegations set forth above and below.

77. At all times herein relevant, SRABIAN/QUICKEN created, accepted and acted in a fiduciary relationship of great trust for Plaintiff's alleged benefit. SRABIAN/QUICKEN further placed itself in a position of trust by virtue of the expertise represented by and through its agents and employees.

78. Defendants, and each of them, breached their fiduciary duties owed to Plaintiff by negotiating and placing Plaintiff in the Subject Loan without due care to Plaintiff's best interest or for the protection of their rights. Defendants did this by, among other things, making false representations and failing to make material disclosures regarding the Subject Loan.

79. Defendants SRABIAN/QUICKEN acted in the capacity as a broker by selling or somehow transferring the Subject Loan on to a third party.

80. As a result of Defendants' breach of fiduciary duties, Plaintiff has suffered, and will continue to suffer, damages, the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court.  Plaintiff is entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial.  In addition, Plaintiff has been forced to retain a law firm to enforce their rights and have incurred, and will continue to incur, costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to according to proof.

81. The Defendants' aforementioned conduct was made with the intention of thereby causing injury and despicable conduct subjecting Plaintiff to a cruel and unjust hardship in a conscious disregard of Plaintiff's rights.

82. Plaintiff is informed and believes, and on that basis allege, Defendants, and each of them, acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiff, and to Defendants' direct benefit, knowing Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiff and entitles him to punitive damages under California Civil Code §3294, in an amount sufficient to punish or make an example of Defendants.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17200 et seq.**
**(Against All Defendants)**

83. Plaintiff incorporates by reference the allegations set forth above and below.

84. Plaintiff is informed and believe, and on thereon allege, Defendants' acts, as alleged herein, constitute unlawful, unfair and/or fraudulent business practices, as defined by California Business and Professions Code §17200 et seq.

85. Violations of Business and Professions Code §17200 *et seq.* are tethered to all viable causes of action listed herein, including Deceit, Negligence and Breach of Fiduciary Duty.

86. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, damages and injuries in an amount subject to proof at trial.

87. Plaintiff seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

**PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as set forth below:

a. For compensatory damages in an amount to be determined by proof at trial;

b. For special damages in an amount to be determined by proof at trial;

c. For general damages in an amount to be determined by proof at trial;

d. For statutory damages in an amount to be determined by proof at trial;

e. For treble damages in an amount to be determined by proof at trial;

f. For punitive damages;

g. For attorney's fees and costs of this action;

h. For declaratory and injunctive relief, including a declaration that Plaintiff is the prevailing party and that Defendants are prevented from engaging in any sale, transfer, conveyance, actions or any conduct adverse to Plaintiff's interest in the Subject Property;

i. For judgment rescinding the Subject Loan and the corresponding security agreement and setting forth terms of restitution;

j. For expungement of any and all foreclosure instruments relating to the Subject Property;

k. For removal of any and all derogatory information reported to any and all credit reporting agencies and/or bureaus relating to the transaction involved herein;

l. For restoration of Plaintiff's credit score and good name;

m. For any prejudgment or other interest according to law;

n. Such other relief as set forth and requested above; and

o. Any other and further relief this Court deems equitable and proper.

**JURY DEMAND**

Plaintiff hereby demands trial by jury.

DATED: May 11, 2011 Respectfully submitted,

UNITED LAW CENTER

/S/John S. Sargetis______________
John S. Sargetis, Esq.
Attorneys for Plaintiff